MORGAN S. DRAKE, Respondent, v. V. W. BAGLEY *et al.*, Appellants.

Kansas City Court of Appeals, February 1, 1897.

1. Justices' Courts: JURISDICTION: ENTRY OF JUDGMENT: PREJUDICE. A justice will not lose jurisdiction in an action merely because he does not render judgment within three days after submission, nor enter it upon his docket for two years after its rendition, even though his term expired and he is reelected in the interim, provided such delayed entry of the judgment does not prejudice the other party to the action.

2. ———: JUDGMENT: RENDERING V. ENTERING. The statute recognizes the distinction between rendering and entering a judgment. The one is a judicial act, the other merely ministerial.

3. ———: JURISDICTION: NOTE FOR REAL ESTATE. A justice has jurisdiction of a note for $208 where the defendant on the purchase of the real estate agreed to take up the note as part payment, though he was not an original party to the note.

*Appeal from the Jackson Circuit Court.*—HON. C. O. TICHENOR, Special Judge.

REVERSED.

*Meservey, Pierce & German* for appellants.

(1) Respondent next seeks to stay the judgment of the justice because it was not rendered by the jus-

tice and entered on his docket within three days after
the case was submitted to him for his final decision, in
accordance with the provisions of section 6279, Revised
Statutes, 1889. The delay or neglect of the justice in
rendering his decision or in entering the judgment on
his docket is not sufficient to render it invalid. R. S.
1889, sec. 6299; *Herwick v. Barbers' Supply Co.*, 61
Mo. App. 454; *Stroeh v. Dry Goods Co.*, 2 Mo. App.
Rep. 1302 (decided April 6, 1896); *Young v. Kellman*,
10 Mo. App. 589. This case has now been overruled
by the two cases cited by us above, one of which was
decided by this court and the other by the St. Louis
court of appeals. (2) Where a justice is his own suc-
cessor, there is no change in the office, the cases are
continued in the same manner as if there had been no
election and no qualification. *Seale v. Ford*, 29 Cal.
105; *Fleming v. Mulhall*, 9 Mo. App. 71. (3) "It is
against the whole policy of the law, as well as the
express provisions of our statute, to scan too narrowly
and scrutinize too closely proceedings before justices of
the peace." *Caldwell v. Fea*, 54 Mo. 55; *Rutherford v.
Wim*, 3 Mo. 12; *Davis v. Wood*, 7 Mo. 165; *Franse v.
Owens*, 25 Mo. 329; *Stemmons v. Carey*, 57 Mo. 222;
*State v. Griffie*, 118 Mo. 188; *State v. Hockaday*, 98 Mo.
590; *Klein v. Wielandy*, 15 Mo. App. 581; *Wise v.
Loring*, 54 Mo. App. 259; *Cabanne v. Spalding*, 14 Mo.
App. 312; *Buis v. Cooper*, 63 Mo. App. 196; *Matthews
v. Houghton*, 11 Me. 377; *Ex parte Quong Lee*, 31 S.
W. Rep. (Tex.) 391; *Stokes v. Knarr*, 11 Wis. 389.

*T. B. Buckner* for respondent.

(1) The justice shall render his decision "within
three days after the cause shall have been submitted to
him for his final decision." R. S., sec. 6279. Sec-
tion 6299 only applies to irregularities in entering a

judgment which has been "rendered." (2) The failure of the justice to record his pretended judgment until after his commission had expired, rendered his act absolutely null and void. An entry made in the docket of a justice of the peace after the expiration of his term of office is a nullity. *Gage v. Vail*, 73 Mo. 454. "And the judgment, therefore, has no validity whatever." *Norton v. Porter*, 63 Mo. 346; *Smith v. Chapman*, 71 Mo. 217; *Gilbraith v. Galliven*, 78 Mo. 452. (3) The justice never at any time had jurisdiction in said case because it was based on a covenant contained in a warranty deed and because the assumption was one entire transaction, and the amount of such entire assumption was beyond the jurisdiction of the justice. *Patterson v. Yancy*, 81 Mo. 379; *McGruder & Co. v. Randolph*, 77 N. C. 79; *Fuller v. Sparks*, 39 Tex. 136; *Duos v. Easthem*, 2 Yerg. 297; *Scofield v. Pensius*, 26 Miss. 402; *Lucas v. LeCamp*, 42 Ill. 303.

GILL, J.—This is a suit to enjoin and cancel an alleged judgment of a justice of the peace, purporting to have been rendered October 12, 1892, in favor of defendant Bagley and against plaintiff Drake.

The facts are about as follows: In July, 1892, Bagley sued Drake on a note for $208, which was one of two equal amounts and which were executed by one Nettleton for balance due on purchase STATEMENT. of real estate. Drake bought the land from Nettleton, and in the deed made to him he, Drake, agreed to pay the two notes as part of his purchase price. The suit came on trial before the justice September 5, 1892, when the evidence was heard; and then, according to the testimony of Drake and his attorney the justice took the case under advisement; but according to the testimony of the justice and Bagley's counsel, the case was continued from September

5 to September 12 and again to October 12, 1892, to permit briefs to be filed by both sides. But for whatever reason, the proof is convincing that the cause was in fact continued to October 12, 1892; and at that time the justice declared his judgment for Bagley against Drake for the amount of the note and interest. Neither Drake nor his attorney were present in the justice's court after the trial on September 5, though it appears Drake's counsel, at some time at or after said September 5, furnished the justice with a brief, which was answered by Bagley's counsel at some time between September 12 and October 12.

The institution of the suit mentioned, the various continuances and judgment, were not entered in the justice's docket at the respective dates. The justice negligently failed to perform this duty until the fore part of December, 1894, at which time an execution was ordered out and a garnishee summoned. The only record of the proceedings which the justice had kept prior thereto was contained in memoranda entered from time to time as the matters occurred, on the outside of a file envelope inclosing the papers of the case. These indicated in a brief way what was done in the justice's court, beginning with the issue of summons down to the rendition of judgment.

It is also proper to state that the justice (Hawthorne) was originally elected and qualified in November, 1890, for a term of four years and "until his successor is elected and qualified." He was, however, re-elected at the November election, 1894, and therefore, during all the dates concerning this litigation, acted continuously as a justice of the peace and in charge of the suit of *Bagley v. Drake*.

On the facts, the substance of which is stated above, the circuit judge held the justice's judgment void and decreed accordingly. Defendants appealed.

I think the judgment of the circuit court is wrong and ought to be reversed. The learned special judge held the judgment of the justice of the peace invalid because of the delay in entering the same in the justice's docket. This delay, it will be remembered, was for a period of two years; and when Hawthorne, the justice, wrote out in full the judgment in his docket, he had entered upon his second term of office. In other words, the cause was tried and judgment rendered during the first term and the same justice wrote up the docket entry after the beginning of his second term. From these facts the circuit judge held, on the express authority of *Gage v. Vail*, 73 Mo. 454, that the justice's judgment was void. The case cited is not in point. From the meagre showing contained in the opinion of that case it appears that Lewis, who had ceased to hold the office of justice of the peace, assumed to render and enter a judgment in a case pending before him during his term; and the court rightly held that as he had gone out of office his judicial functions had ceased; while here the same justice *continued* in office and, therefore, retained the authority he assumed to exercise. There was no change in the incumbency of the office, for Hawthorne was his own successor.

The further question is, did the long neglect of the justice to enter a formal judgment in his docket operate as a discontinuance of the action, and put an end to the justice's jurisdiction. We think not. It is true that section 6279 of the Revised Statutes declares it to be the duty of the justice to "render judgment and enter the same in his docket within three days after the cause shall have been submitted to him for his final decision." But there is another section at the close of the same chapter (6399) which provides, that "no judgment rendered by any justice of the peace shall be

*Marginal note:* Justices' courts: jurisdiction: entry of judgment: prejudice.

deemed invalid, stayed, or in any way affected by reason of the neglect or failure of the justice to enter the same within the time prescribed, or by reason of any informality in entering or giving such judgment or other entry required to be made in the docket, or for any other default or negligence of the justice   *   *   * by which neither party shall have been prejudiced." If the question was to be determined by the consideration alone of the first section above quoted, then it might well be contended that the justice would be required absolutely to render and enter his judgment within the three days after the cause was finally submitted, or else lose jurisdiction.   But the legislature, doubtless seeing the disastrous results that might, or perhaps did, follow from the carelessness of these unlearned tribunals, enacted in the revision of 1879 the last section above quoted, the manifest purpose of which was to save litigants from the serious consequences flowing from the neglect of the justice.   And it has accordingly been in effect held by this and the St. Louis court of appeals that a judgment by a justice of the peace can not be treated as void because rendered after the expiration of the three days, unless such delay has worked to the prejudice of the party complaining thereof.   *Stroeh v. Dry Goods Co.*, 65 Mo. App. 103; *Herwick v. Barbers' Supply Co.*, 61 Mo. App. 454.

The remark made in these cases that "there is no essential distinction between the rendition of a judgment and its entry," must, however, in my opinion, be taken with reference to the particular cases and the curative effect to be derived from section 6299. If the language used in the opinion by Judges ROMBAUER and SMITH is to be taken in the sense that said section of the statute was meant to cover not only the neglect of the justice in *entering* the judgment in his docket, but as well his

——: judgment: rendering v. entering.

delay or carelessness in *rendering* the same after final submission, then I conceive it proper, otherwise not. For I understand it to be technically true that there *is* a distinction between *rendering* and *entering* a judgment; and this distinction is so recognized by the statute. Section 6279. The first (or rendition of judgment) is strictly a *judicial* act, while the latter (the entering thereof) is merely *ministerial*. There may be a judgment where there is no formal entry. 1 Freeman on Judgments, section 38. As in this case, the judgment by the justice was *rendered* October 12, 1892, while the same was *entered* in the justice's docket in December, 1894. But this neglect of the justice to perform the duties of rendering and entering the judgment in question within the time prescribed will not, as already stated, invalidate the judgment, and this because of the provisions of section 6299.

So, then, whether the action of *Bagley v. Drake* was submitted to the justice for final decision on September 5, or on October 12, 1892, the judgment is not invalid, even though the same was not regularly entered or written in the justice's docket until two years thereafter—*provided* of course, that Drake, against whom the judgment was rendered, was not prejudiced by such delay. The evidence fails to show any such prejudice. If anything, the delay to enter the judgment, and proceed in its collection, was to Drake's advantage.

There is no merit in the objection to the justice's jurisdiction over the subject-matter of the action. The two notes (of $208 each) assumed by Drake were separate and distinct causes of action, and each

——: jurisdiction: note for real estate.

was within the limit of the justice's jurisdiction. By his promise to pay these notes Drake became bound in the same manner and to the same extent as if he had signed them as co-maker.

Neither was the action based on a covenant of warranty, and hence the cases cited along that line by respondent's counsel have no application.

Some other questions are discussed in the briefs, but in view of our opinion on the validity of the justice's judgment, it becomes unnecessary to mention them.

The judgment of the circuit court will be reversed. All concur.